# United States District Court

NORTHERN DISTRICT OF GEORGIA

JUN 0 4 2008

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

UNITED STATES OF AMERICA

v

CRIMINAL COMPLAINT

CASE NUMBER  1 08-MJ-618

AMADOR CORTES MEZA, aka Javier,

JUAN CORTES MEZA,

FRANCISCO CORTES MEZA, aka Paco, and

RAUL CORTES MEZA, a/k/a Oscar

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief  On or about **December, 2007 to present**, in **Gwinnett** County, in the Northern District of Georgia defendant(s) did,

**conspire, encourage and induce aliens to come to, enter and reside in this country and transport aliens in this country both for financial gain**

in violation of Title 8, United States Code, Section(s)  1324(a)(1)(A)(iii), (iv), (v)(i), and 1328 .

I further state that I am a Special Agent with Immigration and Customs Enforcement and that this complaint is based on the following facts

Continued on the attached sheet and made a part hereof     (x) Yes ( ) No

Signature of Complainant
Hye Jeong (Jeannie) Yoo

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendants has committed it  Sworn to before me, and subscribed in my presence

June 4, 2008                                                at    Atlanta, Georgia
Date                                                              City and State

Alan J  Baverman
United States Magistrate Judge
Name and Title of Judicial Officer                    Signature of Judicial Officer
AUSA Susan Coppedge

## AFFIDAVIT IN SUPPORT OF ARREST WARRANTS
## AND SEARCH WARRANT

1. I, Hye Jeong Yoo, Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, being duly sworn, depose and state as follows.

2. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE). I have been employed with ICE since September 2002 As a Special Agent, I have been involved in and conducted investigations relating to the trafficking of human victims into the United States

3. Based on my training and experience, as well as information provided to me by other law enforcement agents, I know that persons involved in the smuggling of illegal aliens into and harboring of illegal aliens within the United States often keep in their residences and automobiles· genuine and/or fraudulent identity documents, and/or copies of altered forms of such identity documents, including but not limited to birth certificates, various forms of photo identification, and social security cards, travel documents, including but not limited to passports that may contain entry or exit stamps, visas, and airline tickets, correspondence to and from their associates often kept in books, papers and electronic devices; and addresses and telephone numbers of their associates in books, papers and electronic devices   I also know that persons engaged in prostitution or the promotion of prostitution often keep in their residences and automobiles proceeds obtained from prostitution and/or financial records regarding the movement of prostitution proceeds, such as Western Union wire transfer receipts, lists of telephone numbers of drivers used to transport prostitutes, motor vehicle registrations, insurance and repair records for the vehicles used to transport the prostitutes, business cards for fictitious businesses which are really engaged in prostitution, prescription or other medical records of treatment for urinary or vaginal infections and birth control, and prostitution paraphernalia such as United States currency, clothing, and large quantities of condoms and lubricants.

4. The facts and information contained in this affidavit are based on my personal knowledge, observations, and interviews, as well as facts and information communicated to me by other state, local, and federal government officials   I am familiar with this investigation  Not all of the facts known to me or to the government are described in this affidavit

5. Based on my investigation, I have reason to believe that Amador CORTES MEZA, aka "Javier"; Juan CORTES MEZA; Francisco CORTES MEZA, aka "Paco"; Raul CORTES MEZA, aka "Oscar"; and others, have been and are involved in violations of Title 8, United States Code, Sections 1324 (a)(1)(A)(iii), (iv), and (v)(I) (harboring illegal aliens) and 1328 (importation of aliens for prostitution).

1

## PERSONS TO BE ARRESTED

6. As a result of your affiant's participation in this investigation, your affiant submits that the facts outlined below establish probable cause for the issuance of arrest warrants for the violations set forth in paragraph 5 the following individuals

   (a) Amador CORTES MEZA, aka "Javier," a Hispanic male, 34 years of age, 5'4"-5'5" tall, 170lbs, husky build, medium-dark complexion, black hair, clean-shaven, scar on legs

   (b) Juan CORTES MEZA, a Hispanic male, 31 years of age, 5'9"- 5'10" tall, 175lbs, thin build, dark complexion, blonde-streaked black hair.

   (c) Francisco CORTES MEZA, aka "Paco," a Hispanic male, 24 years of age, 5'10" tall, 170lbs, thin build, light complexion, mustache and goatee.

   (d) Raul CORTES MEZA, aka "Oscar," a Hispanic male, approximately 19-21 years of age, 5'0" tall, very thin build, light complexion, clean-shaven, scars on the back of his legs

## LOCATIONS TO BE SEARCHED

7. Your affiant further submits that the facts outlined below establish probable cause for the issuance of search warrants for the following premises within Gwinnett County in the Northern District of Georgia, because probable cause exists to believe that contained in these locations are fruits, instrumentalities, and evidence of violations of the United States laws set forth in paragraph 5  These fruits, instrumentalities and evidence are more particularly described in Attachment B

   (A) 5468 Charmaine Bend, NW, Norcross, Georgia 30071. The residence located at 5648 Charmaine Bend NW is a single-family dwelling, beige vinyl sidings and red brick in color with burgundy shudders  The residence is clearly marked with a mailbox surrounded with a red brick fixture and is marked with the numbers 5648 (black w/ white background). The driveway is located on the left hand side of the house and the top is marked with lion like statues on red brick pedestals on either side.

   (B) 5016 Rockborough Trail NW, Norcross, Georgia 30071  The residence located at 5016 Rockborough Trail NW is a single-family dwelling, grey in color with white trim. The residence is clearly marked with a mailbox marked with the numbers 5016. The garage is located on the left hand side of the residence and has a single white door, marked with the numbers 5016

2

    (C)    A green1999 Ford Expedition, VIN# 1FMRU17L3XLC50645, bearing Georgia Tag Number ADV6236, registered to Amador Cortes Meza.

    (D)    A white 2000 Dodge Intrepid, VIN# 2B3HD46R2YH210631, bearing Georgia Tag Number WX07GC, registered to Juan Cortes Meza

    (E)    A red 1999 Pontiac Grand AM, VIN# 1G2NE52T3XC542539 bearing Georgia License plate ACG0350, registered to Francisco Cortes Meza

## ITEMS TO BE SEIZED

8. The items to be seized are set forth in Attachment B, which is incorporated into this affidavit.

## PROBABLE CAUSE

9. On January 24, 2008, agents from the ICE Atlanta, Georgia Office, and Bartow County Sheriff's Office (Bartow County Joint Task Force) attempted to conduct a "knock and talk" interview at 22A Montgomery Street, Cartersville, Georgia, which was determined to be a place of prostitution. During the operation, Agents encountered Edison Wagner ROSA TORT, aka "Caruso," aka "The Argentinean," and a victim of human trafficking, henceforth referred to as Victim One (1), a twenty-seven-year-old Mexican national. ROSA TORT is currently charged in a three count indictment in the Northern District of Georgia with: 1) conspiracy to engage in sex trafficking, transportation in interstate commerce for the purpose of prostitution, and harboring for financial gain, in violation of 18 U.S.C. § 371, 2) importation of an alien for an immoral purpose in violation of 18 U.S.C. § 1328; and 3) harboring for financial gain, in violation of 8 U.S.C §1324(a)(1)(A)(iii) and 1324 (a)(1)(B)(i).

10. During the course of the investigation related to ROSA TORT's activity, agents conducted surveillance of several locations, placed monitored phone calls, and interviewed witnesses. Based on these and other investigative steps, your affiant has learned that from approximately Spring 2006, continuing to the present, Amador CORTES MEZA aka "Javier", Juan CORTES MEZA, Francisco CORTES MEZA aka "Paco," and Raul CORTES MEZA aka "Oscar" were involved with ROSA TORT in obtaining, harboring, transporting and employing illegal aliens from Mexico as prostitutes. Based on information from the sources aforementioned, it is your affiant's understanding that brothers, Amador CORTES MEZA aka "Javier" and Juan CORTEZ MEZA, traveled to Mexico, where they enticed at least two young women to travel with them to the United States, by making false promises of romantic relationships or employment in restaurants or as housekeepers. Amador CORTES MEZA and Juan CORTEZ MEZA traveled with the women from Mexico to Georgia, placed them in housing, and arranged prostitution work for them. Upon their arrival the women were informed that they were required to work as prostitutes. Victim 1 and Victim 2, whose accounts are summarized below, were brought to the United States under these circumstances. Victim 1 and Victim 2, along with other women,

3

have been harbored in residences controlled by Amador CORTES MEZA, Juan CORTEZ MEZA, Francisco CORTES MEZA, or Raul CORTES MEZA. Women employed by this prostitution business are monitored by at least one of the four men mentioned, to ensure their compliance and continued work as prostitutes. The women are rotated to different houses, which are controlled by a different pimp, after one to three months of residency. A house may also be co-managed by more than one pimp. These houses are rented in close proximity to clients and houses of prostitution. Men who are referred to as "drivers" typically pick-up the women from the pimps' residences and transport the women to clients' residences or houses of prostitution each night for work  The drivers return the women to the house of their pimp at the end of the night  The women typically provide sexual services to approximately 25 clients each night and their earnings are kept by the driver and/or the pimp  Francisco CORTES MEZA aka "Paco" and Raul CORTES MEZA aka "Oscar" have been employed by their uncles, Amador CORTES MEZA aka "Javier" and Juan CORTEZ MESA, to supervise houses where prostitutes are harbored and as drivers for the prostitutes.

11. On January 24, 2008, after encountering law enforcement agents at 22A Montgomery Street, Victim 1 brought agents to her then-residence, 40 Penny Lane, Cartersville, Georgia, where she had resided for the past three days with ROSA TORT and his family. Present at 40 Penny Lane was ROSA TORT's common-law wife, MMLC, who consented to an interview and provided Agents consent to search her house. During the "knock and talk" interview, MMLC notified the Agents that she was aware of ROSA TORT's prostitution business. MMLC stated the prostitutes employed by ROSA TORT would work at 22A Montgomery Street or various clients' houses and reside at 40 Penny Lane during their employment  MMLC noted that several prostitutes had rotated through 40 Penny Lane, staying in that residence for short periods of time. MMLC further stated that ROSA TORT kept a calendar to notate the designated dates that specific prostitutes were employed by ROSA TORT, as well as the prostitutes' nicknames and contact telephone numbers  MMLC provided the calendar to Agents, which contained the aforementioned information  Also present at 40 Penny Lane were notebooks/ledgers belonging to Victim 1.

12 Agents then interviewed Victim 1, who originally stated that she was solicited and enticed by ROSA TORT to enter the United States under false pretenses of restaurant or housekeeping employment in the United States  In a subsequent debriefing, Victim 1 recanted that accusation and stated that it was Amador CORTES MEZA and Juan CORTES MEZA who solicited and enticed her to travel to the United States in or about Spring 2006  Victim 1 stated she first met Amador CORTES MEZA and Juan CORTES MEZA in Tuxtepec, Mexico, and that she was not aware that she would be working as a prostitute prior to her departure from Mexico. According to Victim 1, she traveled with Amador CORTES MEZA, Juan CORTES MEZA, and another young woman named "Monica" across the border into the United States, after Amador CORTES MEZA offered to help her find work and a better life in the United States. Amador CORTES MEZA made all of Victim 1's travel arrangements with smugglers also known as "coyotes." Amador CORTES MEZA did not tell Victim 1

4

that she would be required to work as a prostitute to pay for her trip to the United States until she reached Atlanta, Georgia. According to Victim 1, Amador CORTES MEZA, and ROSA TORT forced her to work as a prostitute in the Atlanta, Georgia. Victim 1 stated that ROSA TORT and Amador CORTES MEZA were part of a prostitution business, which also included Amador CORTES MEZA's brother, Juan CORTES MEZA and nephews Francisco CORTES MEZA aka "Paco" and Raul CORTES MEZA aka "Oscar."

13  According to Victim 1, she lived in several houses in the Northern District of Georgia beginning in or about Spring 2006 at the direction of either Amador CORTES MEZA or ROSA TORT for periods of time ranging from a few days to approximately three months. While living in these houses, Victim 1 was not allowed to come and go, and was required to work as a prostitute. Victim 1 often lived with other women who were also brought from Mexico to work as prostitutes. Victim 1 was not allowed to keep any of the proceeds from her prostitution employment and that the money was in the custody of ROSA TORT, Amador CORTES MEZA, and/or Juan CORTES MEZA.

14  Victim 1 indicated that she has lived in several houses in the Norcross, Georgia area. Victim 1 identified various houses in the Norcross area, where she and other Mexican females were harbored for the purpose of prostitution. These locations include, but are not limited to, 5648 Charmaine Bend, Norcross, Georgia; 2459 Windmere Drive [2459 Bailey Drive], Norcross, Georgia, 2173 Huddersfield Way, Norcross, Georgia, 5118 Gulf Terrace, N.W., Norcross, Georgia, and 5016 Rockborough Trail, Norcross, Georgia.

15. Victim 1 stated that she and other prostitutes lived in the house on 2173 Huddersfield Way with Raul CORTES MEZA, aka "Oscar;" she and other prostitutes lived in the house on 2459 Bailey Drive with Amador CORTES MEZA and Juan CORTES MEZA, and that she and other prostitutes lived in the house on 5118 Gulf Terrace NW, Norcross, Georgia with Francisco CORTES MEZA aka "Paco." During her time in these residences and others, Victim 1 indicated that the male resident monitored the women, directed their prostitution work, and provided them with food and other necessities. Victim 1 identified other prostitutes within the organization as "Yolanda" LNU; "Maribel" LNU, aka Belin; "Mariana" LNU; "Monica" LNU; "Myra" LNU; "Elisabeth" LNU; and "Daniela" LNU Victim 1 stated she believed "Maribel" might be seventeen years of age.

16  Victim 1 explained that different drivers came to pick her up at the various residences where she lived and took her to different places to work as a prostitute Victim 1 further stated that on occasions when she discussed leaving the organization, attempted to refuse to work, or failed to comply with the orders of one of the pimps, she was threatened by Raul CORTES MEZA aka "Oscar," threatened and physically assaulted by Amador CORTES MEZA, and threatened and physically assaulted by ROSA TORT Victim 1 also stated that she witnessed Juan CORTES MEZA physically assault "Monica" LNU, and Francisco CORTES MEZA assault

"Elisabeth" LNU. As result of the violence that Victim 1 witnessed or was subjected to, she was afraid of all of the pimps involved in this organization.

17. According to Victim 1, Amador CORTES MEZA, aka "Javier" drove a green Ford Expedition and that Francisco CORTES MEZA aka "Paco" drove a red sports car. Victim 1 provided law enforcement agents with a photograph of Amador CORTES MEZA. Victim 1 indicated that she believed Amador CORTES MEZA and his brother and nephews may be currently residing or found at 5648 Charmaine Bend and 5016 Rockborough Trail. Surveillance on April 24, 2008, of 5648 Charmaine Bend revealed a Hispanic male subsequently identified by Victim 1 as Amador CORTES MEZA driving the green Expedition bearing Georgia license plate ADV6236. Database queries revealed the vehicle was registered to Amador CORTES MEZA, with date of birth 05/01/1974 and address 2173 Huddersfield Way, Norcross, Georgia

18. On May 21, 2008, Agents conducted surveillance of 5648 Charmaine Bend, during which time the following vehicles were observed arriving and departing at the location: A red Mercury Cougar with a temporary dealer license plate, a white Dodge Intrepid bearing a Georgia license plate WX07GC, and a red Pontiac Grand Am bearing Georgia license plate ACG0350. Surveillance revealed that a Hispanic male driving the red Mercury Cougar departed 5648 Charmaine Bend at approximately 1555 hours and arrived at 5016 Rockborough Trail at approximately 1603 hours Agents have additionally seen young Hispanic females leaving and departing from 5648 Charmaine Bend during surveillance conducted on April 24, 2008, May 12, 2008; May 21, 2008; and May 31, 2008.

19. Database queries revealed that the white Dodge Intrepid is registered to Juan CORTES MEZA, with date of birth 06/01/1977 and address 2459 Windmere Drive, Norcross, Georgia Database queries also revealed that the red Pontiac Grand Am is registered to Francisco CORTES MEZA, with date of birth 06/04/1983 and address 5016 Rockborough Trail, Norcross, Georgia. Immigration and Georgia driver's license database queries of both subjects resulted in negative findings Surveillance revealed that a Hispanic male driving the white Dodge Intrepid and a Hispanic male driving the red Pontiac Grand Am both departed 5648 Charmaine Bend at approximately 1613 hours and arrived at 5016 Rockborough Trail immediately thereafter. During that time, the red Mercury Cougar, the white Dodge Intrepid, the red Pontiac Grand Am, and the green Ford Expedition were all parked at 5016 Rockborough Trail. The Hispanic male driving the white Dodge Intrepid and the Hispanic male driving the red Pontiac Grand Am departed 5016 Rockborough Trail at approximately 1643 hours and arrived at 5648 Charmaine Bend at approximately ten minutes later.

20 Continued surveillance on May 21, 2008, revealed that at approximately 1711 hours, a Hispanic male driving a blue Toyota Celica, bearing a Georgia license plate ABS6805, arrived at 5648 Charmaine Bend and departed with a Hispanic female passenger from the residence. Database queries revealed that the blue Toyota Celica

was registered to Otto Jaime LARIOS PEREZ, with date of birth 03/15/1984 and address 55 Northwood Drive NE, Apartment S10, Atlanta, Georgia Gwinnett County Police Department conducted a traffic stop of the vehicle for failure to maintain lane and unsafe lane change. During the traffic stop, the Hispanic male driver was identified as Otto Jaime LARIOS PEREZ and the passenger henceforth referred to as Victim Two (2). LARIOS PEREZ was determined to be driving without a valid driver's license and illegally present within the United States. LARIOS PEREZ is currently in Gwinnett County Sheriff's Office custody with an immigration detainer pending his release Victim 2 confirmed that LARIOS PEREZ was a driver transporting Victim 2 from 5648 Charmaine Bend to an unknown destination for the purpose of prostitution

21 Victim 2, a 19-year-old Mexican National, stated that Amador CORTES MEZA solicited and enticed her to illegally enter the United States for the purpose of prostitution. Victim 2 stated that on March 22, 2008, she met Amador CORTES MEZA in Vera Cruz, Mexico, on a blind date established by her married sister. According to Victim 2, Amador CORTES MEZA frequented the family restaurant in Tierra Blanca, Mexico, and inquired of Victim 2's sister regarding single, eligible siblings. According to Victim 2, her sister provided Amador CORTES MEZA Victim 2's telephone number, and the two were in communication shortly before they met Victim 2 stated Amador CORTES MEZA traveled to her hometown of Vera Cruz, and they began a romantic relationship According to Victim 2, less than one month after they had dated and began residing together in his hometown Puebla, Mexico. Amador CORTES MEZA appeared preoccupied and received excessive calls on his cellular telephone Victim 2 stated Amador CORTES MEZA finally told her that he was in deep financial troubles According to Victim 2, Amador CORTES MEZA then asked her to move to the United States with him and to perform prostitution for one month to financially assist him. Victim 2 refused Amador CORTES MEZA asked her on three additional occasions to perform prostitution for him Victim 2 replied no on each occasion Victim 2 suggested that if Amador CORTES MEZA really needed the money, they could ask her mother for a loan. Victim 2 stated they never asked her mother for the loan. Victim 2 stated that instead, Amador CORTES MEZA asked her a final time to perform prostitution for him in the United States. When Victim 2 stated again that she would not, Amador CORTES MEZA notified her that he would drive her to the bus station and that she could find her way back to her mother's house According to Victim 2, she finally agreed, but that she did not truly believe Amador CORTES MEZA would force her to perform prostitution According to Victim 2, Amador CORTES MEZA would reiterate his love for her and make plans for their marriage and life together. Victim 2 stated Amador CORTES MEZA subsequently arranged for her travels to Atlanta, where she arrived and began performing prostitution. Victim 2 stated she gave all of the prostitution proceeds to Amador CORTES MEZA, as previously instructed by him

22 Victim 2 stated Amador CORTES MEZA brought her and another female from Mexico during the same period of time According to Victim 2, Amador CORTES MEZA explained to her that she was his girlfriend and that the other women were his

employed prostitutes  Victim 2 stated she noticed that some of the other women would talk to Amador CORTES MEZA in an affectionate way that made her feel uncomfortable  Victim 2 subsequently discovered that Amador CORTES MEZA had other girlfriends.

23  Victim 2 stated she was not allowed to freely come and go as she pleased from the residence. Victim 2 stated she was only allowed to run errands or go shopping while supervised by Amador CORTES MEZA or another pimp. Victim 2 stated Amador CORTES MEZA, on one occasion, slapped her for not following his orders  Victim 2 stated she was afraid of Amador CORTES MEZA and the bodily harm he was capable of inflicting upon her

24  On June 2, 2008, Victim 2 stated Amador CORTES MEZA utilized 5648 Charmaine Bend and Francisco CORTES MEZA aka "Paco" utilized 5016 Rockborough Trail to harbor Hispanic females whom they smuggled into the United States for the purpose of prostitution.  On June 2, 2008, agents conducted drive-by surveillance of 5648 Charmaine Bend with Victim 2, and observed the red Pontiac Grand Am with Georgia license plate ACG0350 registered to Francisco CORTES MEZA. Victim 2 stated the vehicle belonged to, and was usually driven by, Raul CORTEZ MEZA aka "Oscar"  During drive-by surveillance of 5016 Rockborough Trail on the same date, agents observed the green Ford Expedition.  Victim 2 stated Amador CORTES MEZA aka "Javier" had recently sold the green Expedition to Francisco CORTES MEZA aka "Paco" and that Amador CORTES MEZA is currently driving a red Mercury Cougar  Victim 2 stated Amador CORTES MEZA had always owned the red Cougar and had kept it stored at Francisco CORTES MEZA's garage until recently.

25  Victim 2 indicated she was residing at 5648 Charmaine Bend with Amador CORTES MEZA aka "Javier" and Raul CORTES MEZA aka "Oscar" and four additional Mexican females who worked as prostitutes: "Monica" LNU from Oaxaca; "Nancy" LNU, aka "Maribel," aka "Andrea," from Oaxaca; Maria Teresa PERFECT MORALES, aka "TALIA," from Oaxaca, and "Rosalina" LNU, aka "Myra," from Oaxaca  Victim 2 stated Nancy LNU (aka "Maribel") was currently seventeen years of age. Victim 1 also indicated that "Maribel" was seventeen years of age. Amador CORTES MEZA provided the women who resided with him at 5648 Charamine Bend, with food, clothing, and other necessities.

26  According to Victim 2, various drivers came to pick her up at 5648 Charmaine Bend and took her to different places to work as a prostitute  Victim 2 indicated that she serviced approximately twenty (20) male clients per day, who were charged $25.00 USD for fifteen (15) minutes of sexual intercourse. Victim 2 stated that of the $25 00 that each client paid, the driver would receive $10.00 and she would receive $15 00. Upon her return to her residence, Amador COURTES MEZA would order her to turn over to him the portion of money that she kept. Victim 2 complied with his demand

27. Victim 2 stated Francisco CORTES MEZA aka "Paco" was currently residing at 5016 Rockborough with three Mexican females who worked as prostitutes: "Kimberly" LNU, aka "Araceli" from Puebla; "Natalia" LNU from Oaxaca; and FNU LNU from Oaxaca. Victim 2 stated Francisco CORTES MEZA recently returned to Atlanta from Mexico, during which trip Francisco CORTES MEZA recruited and smuggled FNU LNU into the United States. Victim 2 stated FNU LNU was currently seventeen years of age.

28. Victim 2 stated she left most of her identification documents in Mexico with her mother. Victim 2 stated she only brought her Mexican student identification card into the United States. Victim 2 stated Amador CORTES MEZA had her surrender her student identification card to him, and that he only occasionally allowed her possession of the card. According to Victim 2, Amador CORTES MEZA instructed her that in the event she was ever encountered by law enforcement, she was to present the student identification card and claim that she entered the United States with a student visa. Victim 2 stated she currently did not have the student identification card in her custody. Victim 2 stated that at this point in time, she was unsure whether the document is lost or Amador CORTES MEZA had custody of it.

29. Victim 2 stated Amador CORTES MEZA, Francisco CORTES MEZA, and Raul CORTES MEZA, as well as other pimps within the organization, alternated control and supervision of the women at any given period of time. Victim 2 stated that she had been physically assaulted by Amador CORTES MEZA and that she witnessed Francisco CORTES MEZA aka "Paco" hit Maria Teresa PERFECTO MORALES

## GROUNDS FOR ARRESTS SEARCH AND SEIZURE

30. Your affiant's investigation has revealed consistent accounts from Victim 1 and Victim 2 of harboring and importation for purposes of prostitution, which were corroborated in part by law enforcement surveillance Victim 1 and Victim 2 both claim they were living their routine lives when they were approached by Amador CORTES MEZA and/or Juan CORTES MEZA and actively solicited and enticed by them to travel to the United States Victim 1 stated she was not aware of nor did she agree to work as a prostitute upon her entry into the United States. Victim 2 stated she regarded Amador CORTES MEZA as her boyfriend and that she did not wish to work as a prostitute. Victim 1 and Victim 2 both claim that Amador CORTES MEZA and/or Juan CORTES MEZA made the arrangements to smuggle them into the United States Both Victims indicate that they were housed by Amador CORTES MEZA and/or his brother Juan CORTES MEZA, and nephews Francisco CORTES MEZA and Raul CORTES MEZA. Victim 1 and Victim 2 both stated that they were not free to come and go as they pleased, and were constantly monitored by at least one of the aforementioned men. Victim 1 and Victim 2 both stated that they did not wish to work as prostitutes; however, they remained in the prostitution business because they feared Amador CORTES MEZA, Juan CORTES MEZA, Raul CORTES MEZA, and/or Francisco CORTES MEZA Victim 1 and Victim 2 were both familiar with 5648 Charmaine Bend and 5016 Rockborough Trail. Victim 1

stated she had resided at both locations with various pimps within the organization. Victim 2 stated she had resided at the former location and was aware of prostitutes and pimps residing at the latter. Victim 1 and Victim 2 were both aware of other prostitutes within the organization to include, but not limited to, "Monica" LNU, "Nancy" LNU, aka "Maribel" LNU; and "Myra" LNU, aka "Rosalina" LNU. Victim1 and Victim 2 both claim "Maribel" LNU is currently seventeen years of age

31. Earlier in this investigation, the consensual searches of residences and vehicle controlled by ROSA TORT, 40 Penny Lane and 22A Montgomery Street, revealed evidence of prostitution and harboring including condoms and lubricants, business cards of fictitious businesses, a calendar/ledger of prostitutes and telephone numbers, and clothing and journals belonging to Victim 1  Based on concurrent information ascertained by Victim 1 and Victim 2, as well as surveillance conducted on the locations listed in Paragraph 7, your Affiant believes the aforementioned residences are currently being used by the same organization for the furtherance and facilitation of alien smuggling and harboring for purposes of prostitution, and that evidence of prostitution and harboring, similar to the evidence found during the consensual searches of locations associated with ROSA TORT, will be found at the locations listed in Paragraph 7

32 Based on the totality of the foregoing information and circumstances, and prior training and experience, your affiant submits that probable cause exists to arrest the individuals listed in paragraph 6 for violations of the following offenses·

   a   knowing and in reckless disregard of the fact that aliens have come to, entered and remained in the United States in violation of the law, harboring such aliens in various places, in violation of Title 8, United States Code, Section 1324 (a)(1)(A)(iii):

   b.  encouraging or inducing an alien to come to enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to entry or residence is or will be in violation of law, in violation of Title 8 United States Code, Section 1324 (a)(1)(A)(iv),

   c.  engaging in any conspiracy to commit any of the preceding acts, in violation of Title 8 United States Code, Section 1324 (a)(1)(A)(v)(I);

   d.  directly or indirectly importing young female aliens from Mexico into the United States for prostitution, or harboring in any house or other place, for the purpose of prostitution or any other immoral purpose, any alien in pursuance of illegal importation, in violation of Title 8, United State Code, Section 1328

10

33 Furthermore, based on the totality of the foregoing circumstances, and prior training and experience, your affiant submits that probable cause exists to believe that the items listed in Attachment B constitute evidence, instrumentalities, and fruits of the criminal offenses set forth in paragraph 5 and that such items are contained in the locations listed in paragraph 7